Viktoriya SHIROBOKOVA, Plaintiff,

v.

CSA CZECH AIRLINES, INC., a foreign corporation for profit, and Delta Airlines, a foreign corporation for profit, Defendants.

No. CIV.04–641 MJD/JGL.

United States District Court,
D. Minnesota.

Aug. 24, 2004.

Christopher R. Walsh, Walsh Law Office, Minneapolis, MN, for Plaintiff.

Michael C. Lindberg, Minneapolis, MN, Allan I. Mendelsohn, Sher & Blackwell, LLP, Washington, DC, Marvin L. Szymkowicz, Savit & Szymkowicz, LLP, Bethesda, MD, for Defendants.

## MEMORANDUM OF LAW & ORDER

DAVIS, District Judge.

## I. INTRODUCTION

This matter is before the Court on (1) a Motion to Dismiss brought by Defendant Delta Air Lines ("Delta"), (2) a Motion to Dismiss Counts III and V of the Complaint brought by Defendant CSA Czech Airlines ("CSA"), and (3) a Motion for Change of Venue by CSA. In the underlying action, Plaintiff Viktoriya Shirobokova has sued Defendants in connection with an injury that she alleges occurred when she was on a CSA flight. For the reasons that follow, the Court grants CSA's Motion for Change of Venue.

## II. FACTUAL BACKGROUND

According to Shirobokova's Complaint, she bought an airline ticket from Minneapolis to St. Petersburg, Russia. On February 4, 2002, she flew on a Delta Flight from Minneapolis to Cincinnati, and then from Cincinnati to New York on a second Delta flight. Shirobokova took a CSA flight from New York to Prague, Czech Republic. The final leg of her journey took place between Prague and St. Petersburg.

Defendants contend that Shirobokova purchased her ticket from Panorama Travel, which is located in New York City. Shirobokova, however, contends that she purchased the tickets from a travel agency in Minnesota.

According to a diplomatic note submitted by CSA, CSA was founded in 1924, and has been continuously owned and operated by the government of the Czech Republic or its predecessors. Further, the note explains that CSA serves as the state carrier of the former Czechoslovokia. The diplomatic note also states that 91 percent of CSA is ultimately owned by the government of the Czech Republic.

Shirobokova alleges that the pilots on the CSA flight from New York to Prague intentionally and recklessly flew through turbulence, which caused her injuries, including "traumatic brain injury, damaged and bulging discs in her spine, [and] a fractured rib."

An airline industry practice called code sharing is significant in this case. Defendants characterize code sharing as an agreement between two air carriers whereby each carrier may sell tickets to the flights of the other's airline; one is the marketing carrier, and one is the operating carrier. Shirobokova contends there was a code sharing agreement between Delta and CSA.

After returning to the U.S., Shirobokova filed the underlying complaint, and now both defendants have moved to dismiss the Complaint. CSA has also moved for a change of venue.

## III. DISCUSSION

The Court will first address CSA's Motion for Change of Venue. CSA relies on the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611, to contend that a venue change is proper. "A primary purpose of the FSIA is to make it difficult for private litigants to bring foreign governments into court, thereby avoiding affronting them." *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 207 (3rd Cir.2003). "Foreign states may invoke certain rights and immunities in litigation under the Foreign Sovereign Immunities Act." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 470–71, 123 S.Ct. 1655, 1658, 155 L.Ed.2d 643 (2003).

The FSIA provides a foreign state with special procedural treatment with regard to venue. *USX*, 345 F.3d at 207. Venue is addressed generally in 28 U.S.C. § 1391, and section 1391(f) in particular addresses venue as it relates to a "foreign state as defined in section 1603(a)." The first question the Court must address is whether CSA meets this definition, which includes "an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a).

An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) *which is an organ of a foreign state* or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor

created under the laws of any third country.

28 U.S.C. § 1603(b) (emphasis added). CSA argues that it is an organ of the Czech Republic. The statute does not define "organ," but caselaw guides the Court in employing a definition. "[F]or an entity to be an organ of a foreign state it must engage in a public activity on behalf of the foreign government." *USX*, 345 F.3d at 208. In determining whether a foreign state is engaged in public activity, courts have stated that broad interpretation is appropriate. *USX*, 345 F.3d at 206; *EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 640 (9th Cir. 2003).

■ CSA points to the diplomatic note, which explains that CSA was created as the state carrier of the former Czechoslovokia, and continues to serve that purpose. The diplomatic note also states that the Czech National Property Fund and Konsolidacni Banka, which are both owned by the Czech government, own approximately 91 percent of CSA. It also states that CSA serves the national interests of the Czech Republic. For purposes of the motion to transfer venue, the Court concludes that CSA is an organ of the Czech Republic, and therefore constitutes an "an agency or instrumentality of a foreign state" under 28 U.S.C. § 1603(a). The Court thus concludes that CSA meets the definition of "foreign state" as employed by § 1391(f), and section 1391(f) is applicable to CSA. That section provides that

[a] civil action against a foreign state as defined in section 1603(a) of this title may be brought -

(1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; [or] . . .

(3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title[.]

28 U.S.C. § 1391(f).

CSA contends that under section 1391(f)(1), because CSA flight 51 originated in New York, and terminated in Prague, it did not operate to, from or over Minnesota. Further, pursuant to section 1391(f)(3), CSA next argues that it is not "doing business" in Minnesota. According to CSA, general nationwide business and a code sharing relationship are insufficient to provide a venue under the "doing business" test. CSA argues that it has no physical presence in Minnesota, and has no airline operations in the state.

■ The Court agrees. Shirobokova has not pointed to any applicable caselaw that addresses code sharing or other business relationships under these circumstances. The Court concludes that CSA is only doing business in New York, and not in Minnesota. The Court therefore concludes that section 1391(f) applies in this case. Further, the Court concludes that New York would be a proper venue for Shirobokova's action against Delta. *See* 28. U.S.C. § 1391(b)(2). The Court concludes that this case should be transferred to the United States District Court for the Southern District of New York. Because the Court grants CSA's motion to change of venue, it need not reach the defendants' motions to dismiss.

IT IS HEREBY ORDERED that

1. Defendant CSA's Motion for Change of Venue [Docket no. 11] is GRANTED.

2. This matter shall be transferred to United States District Court for the Southern District of New York.